## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RAMON DICKERSON; TONI
DUPLANTIS; BRITNEY
SINGLETARY; DARLANE
SARACINA; ARMONDO
VILLANUEVA; SIMONE
ROLLOCK; and MARY SMITH,
individually and on behalf of
themselves and all others similarly
situated,

      Plaintiffs,

v.

COLONIAL PIPELINE COMPANY
and DOES 1-100,

      Defendants.

CIVIL ACTION FILE

NO. 1:21-CV-2098-MHC

## ORDER

This case comes before the Court on Defendant Colonial Pipeline Company

("Colonial")'s Motion to Dismiss [Doc. 44] and Motion to Strike Class Allegations

[Doc. 45].

## I.   BACKGROUND[1]

Colonial operates the Colonial Pipeline, an oil pipeline that stretches 5,500 miles on the East Coast of the United States and carries nearly half of the East Coast's fuel supply.  Pls.' Second Am. Compl. ("SAC") ¶ 1.  On May 7, 2021, a ransomware[2] attack penetrated Colonial's billing software; in response to the cyberattack, Colonial shut down pipeline operations which decreased the supply of gasoline and other fuel products to much of the East Coast of the United States and caused the price of gasoline to rise.  Id. ¶¶ 2-3, 36.  The Federal Bureau of Investigation ("FBI") was notified of the ransomware attack the same day.  Id. ¶ 43.  On May 10, 2021, the FBI confirmed that Colonial had been hacked.  Id. ¶ 48.  Colonial subsequently made a $4.4 million ransomware payment to the

---

[1] Because this case is before the Court on a motion to dismiss, the facts are presented as alleged in Plaintiffs' Second Amended Complaint [Doc. 40], the operative complaint in this case.  See Silberman v. Miami Dade Transit, 927 F.3d 1123, 1128 (11th Cir. 2019) (citation omitted).

[2] "Ransomware is an ever-evolving form of malware designed to encrypt files on a device, rendering any files and the systems that rely on them unusable.  Malicious actors then demand ransom in exchange for decryption."  Id. ¶ 37 (citing the description of ransomware by the Cybersecurity & Infrastructure Security Agency).

perpetrators of the hack. Id. Colonial restarted the pipeline on May 12, 2021. Id. ¶ 49.

Plaintiffs are individuals who purchased gasoline at retail and paid higher prices as a result of Colonial's shutdown. Id. ¶¶ 8-20. Plaintiffs concede they did not purchase their gasoline directly from Colonial, but rather from gas station retailers, and refer to themselves as Colonial's "downstream consumers." Id. ¶¶ 8-20, 112. Plaintiffs bring this action on behalf of themselves and all others similarly situated against Colonial and other anonymous subsidiaries (collectively, "Defendants") which may be responsible for the alleged conduct. Id. ¶¶ 1, 21-23. Plaintiffs' Second Amended Complaint asserts six claims: negligence under state law (Count I); declaratory judgment pursuant to 28 U.S.C. § 2201 (Count II); violations of the North Carolina Unfair and Deceptive Trade Practice Act ("NCUDTPA") pursuant to N.C. Gen. Stat. § 75-1.1 (Count III); breach of public duty pursuant to O.C.G.A. § 51-1-7 (Count IV); public nuisance under state law (Count V); and unjust enrichment under state law (Count VI)[3].

---

[3] The SAC mistakenly labels the unjust enrichment claim as Count IV instead of VI; however, the Court will refer to the unjust enrichment claim as Count VI.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft, 556 U.S. at 678 (internal citation omitted).  Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pleaded facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). Not only must the court accept the well-pleaded allegations as true, but these allegations must also be construed in the light most favorable to the pleader. Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011). However, the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## III.   DISCUSSION

Colonial seeks to dismiss the SAC in its entirety. Mem. in Supp. of Def. Colonial Pipeline Company's Mot. to Dismiss ("Def.'s Br.") [Doc. 44-1]. Colonial contends that Plaintiffs' state law claims are preempted by federal law and that the filed rate doctrine bars all of Plaintiffs' claims. Id. at 10-18. Colonial also argues that each claim fails on substantive grounds. Id. at 18-41. As discussed below, because the Court determines that none of the six counts in the Second Amended

Complaint states a substantive claim upon which relief can be granted, the Court

need not consider Colonial's preemption or filed rate doctrine arguments.

### A.    Count I - Negligence

Count I of the SAC alleges that Colonial is liable for negligence because of a

duty of care it owed to Plaintiffs.  SAC ¶¶ 62-75.[4]  The parties do not dispute that

Georgia law applies to the negligence claim.  To state a claim for negligence under

Georgia law, a plaintiff "must plead facts sufficient to establish: (1) a legal duty of

the defendant; (2) breach of that duty; (3) damages; and (4) a causal connection

between the defendant's breach and the plaintiff's damages."  Edwards v. Wis.

Pharmacal Co., LLC, 987 F. Supp. 2d 1340, 1344 (N.D. Ga. 2013) (citing Berry v.

Hamilton, 246 Ga. App. 608 (2000)).  Dismissal of Count I is warranted for two

reasons: (1) the SAC fails to allege a legally cognizable duty, and (2) the economic

loss doctrine applies.

### 1.    The SAC Fails to Allege A Legally Cognizable Duty.

Plaintiffs allege three duties as the basis for their negligence claim: (1) a

duty as a public utility to continually provide services, SAC ¶¶ 33-34, 62, 67; (2) a

---

[4] The Court notes that the SAC erroneously numbers Paragraphs 62-74 twice, once in the factual allegations of the SAC on pages 19-23 and a second time in Count I on pages 24-25.  In this section, the Court refers to the second set of Paragraphs 62-74 included within Count I on pages 24-25 of the SAC.

duty to use reasonable means to safeguard Defendants' systems which Defendants assumed by delivering a critical commodity, id. ¶ 64; and (3) a duty to comply with industry standards, id. ¶ 65-66.  Plaintiffs attempt to expand upon the basis of the duty supporting their negligence claim in their brief, adding a fourth and fifth duty: (4) a duty to safeguard consumers' private information, and (5) a duty based upon Plaintiffs' special relationship of dependence with Colonial.  Pls.' Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pls.' Resp.") [Doc. 50] at 26-29.

"The existence of a legal duty is a question of law for the court." Rasnick v. Krishna Hosp., Inc., 289 Ga. 565, 567 (2011).  "In the absence of a legally cognizable duty, there can be no fault or negligence." Ford Motor Co. v. Reese, 300 Ga. App. 82, 84 (2009) (citation omitted).  "A motion to dismiss should be granted when a plaintiff fails to allege any cognizable statutory or common law duty." Heath v. ILG Techs., LLC, No. 1:20-CV-3130-TWT, 2020 WL 6889164, at *10 (N.D. Ga. Nov. 24, 2020) (internal quotations and citations omitted).

### a.    Duty to Continually Provide Service

First, Plaintiffs allege that Colonial functions as a public utility and therefore has a duty to provide continual service.  See, e.g., SAC ¶ 34 ("The Colonial Pipeline, like an electric company or a gas company, functions as a public utility and thus has a public duty imposed upon it to continually provide service."), ¶ 67

7

("[T]he Defendants also owed a duty to Plaintiff and the Class not to shut down the pipeline – when it did not need to do so – to ensure the availability of the critical fuel supply.").  "A legal duty sufficient to support liability in negligence is either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of [Georgia's] appellate courts."  Sheaffer v. Marriott Int'l, 349 Ga. App. 338, 340 (2019) (citations and punctuation omitted).  Plaintiffs fail to cite to any statutory provision that could be construed to impose any legal duty upon Colonial.

Since there is no duty imposed by any alleged statutory enactment, a duty can only exist if supported by some common law principle.  First Fed. Sav. Bank of Brunswick v. Fretthold, 195 Ga. App. 482, 484 (1990).  Plaintiffs only include a single sentence in their response that is related to Colonial's alleged duty to provide continual services: "Here, Plaintiffs allege that owning [Critical Infrastructure] used from the transportation or distribution of refined fuel products involves a sufficiently high degree of danger to trigger Colonial's duty to exercise reasonable care in the operation and maintenance of the Pipeline."  Pls.' Resp. at 25 (citing SAC ¶ 67).  Nothing in Plaintiffs' response references any common law duty for Colonial to maintain uninterrupted service.  Thus, Plaintiffs "failed to allege any cognizable statutory or common law duty that [Colonial] allegedly

8

breached." <u>JPMorgan Chase Bank, N. A. v. Durie</u>, 350 Ga. App. 769, 772 (2019) (finding that the trial court erred by denying the motion to dismiss a negligence claim); <u>see also</u> <u>Lincoln v. Fla. Gas Transmission Co. LLC</u>, 608 F. App'x 721, 723 (11th Cir. 2015) (dismissing a negligence claim because the plaintiff failed to allege any facts that gave rise to any duty owed to the plaintiff by Florida Gas Transmission Company).[5]

### b.   Duty Through Voluntary Undertaking

Next, Plaintiffs allege that

> By accepting the duty to deliver a critical commodity and to protect the pipeline in order to keep it running, Defendants had a duty of care to

---

[5] The Court also notes that Defendants argue that Colonial is not a public utility. <u>See</u> Def.'s Br. at 1, 11-12 (citing <u>Williams Pipe Line Co.</u>, Opinion No. FERC ¶ 61,260, at 61,584 (1982)) ("Oil pipeline rate regulation is not a consumer-protection measure.  It probably was never intended to be."); <u>id.</u> at 61,655 ("In oil pipelining, however, we have a very special situation.  There are no 'consumers' here.  The lines are used solely by business enterprises.  Hence the clash between shipper and carrier differs fundamentally from the clash between utilities and their customers.").  Plaintiffs fail to respond to this portion of the motion, indicating it is unopposed.  <u>See</u> <u>Kramer v. Gwinnett Cnty.</u>, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed.").  Indeed, the United States Court of Appeals for the District of Columbia has expressed reservation to categorizing oil pipelines as public utilities: "we may infer a congressional intent to allow a freer play of competitive forces among oil pipeline companies than in other common carrier industries and, as such, we should be especially loath uncritically to import public utilities notions into this area without taking note of the degree of regulation and of the nature of the regulated business."  <u>Farmers Union Cent. Exch. v. FERC</u>, 584 F.2d 408, 413 (D.C. Cir. 1978).

> use reasonable means to secure and safeguard its computer systems and gasoline transmission operations.   Defendants' duty includes a responsibility to implement necessary processes by which it could prevent and/or detect a breach of its computer systems in an expeditious manner, as well as to give prompt notification about the existence of a random where attack, if one would take place.

SAC ¶ 64.  Plaintiffs' allegation constitutes their contention that Colonial's duty arises based upon the voluntary undertaking doctrine, which states that

> one who undertakes to do an act or perform a service for another has the duty to exercise care, and is liable for injury resulting from his failure to do so, even though his undertaking is purely voluntary or even though it was completely gratuitous, and he was not under any obligation to do such act or perform such service, or there was no consideration for the promise or undertaking sufficient to support an action ex contractu based thereon.

Osowski v. Smith, 262 Ga. App. 538, 540 (2003) (citation and quotation omitted).

Colonial argues any attempt to create a duty under the voluntary undertaking doctrine "fails because Plaintiffs allege no physical harm, a fundamental requirement under the doctrine."  Def.'s Br. at 27 (citing In re Equifax, Inc., Customer Data Sec. Breach Litig., 362 F. Supp. 3d 1295, 1326-27 (N.D. Ga. 2019)).  Once again, Plaintiffs do not respond to this  argument, and it is therefore unopposed.  See Kramer, 306 F. Supp. 2d at 1221.

Georgia law clearly provides that no duty is created under the voluntary undertaking doctrine when the plaintiffs fail to allege that they have suffered physical harm.  See Willingham v. Glob. Payments, Inc., No. 1:12-CV-01157-

RWS, 2013 WL 440702, at *18 (N.D. Ga. Feb. 5, 2013) ("Plaintiffs do not allege that they have suffered physical harm; therefore, they cannot state a negligence claim based on the voluntary undertaking doctrine.") (citing Huggins v. Aetna Cas. & Sur. Co., 245 Ga. 248 (1980)).  Plaintiffs plead economic harm, but their Second Amended Complaint is devoid of any allegation of physical harm.  See, e.g., SAC ¶¶ 9, 11, 13, 15, 17, 19, 20 (alleging Plaintiffs incurred a financial injury because they had to pay a higher price for gas at retail), ¶ 67 (alleging Plaintiffs were "harmed in being unable to get gas and when it was available, paying a much higher price for it than they otherwise would have if the pipeline had continued to function.").  Because they fail to allege any physical harm, Plaintiffs' allegation that Colonial's voluntary undertaking established a duty that supports their negligence claim fails as a matter of law.

### c.   Duty Through Industry Standards

Next, Plaintiffs allege that Colonial "owed a duty of care to use security measures consistent with industry standards[,]" and that the "duty to use reasonable care in protecting its systems . . . arose because the Defendants are bound by industry standards to protect itself from ransomware attacks."  Id. ¶¶ 65-66.  Colonial argues that industry standards may be probative of breach but that industry standards do not establish a legal duty.  Def.'s Br. at 27.  Again, Plaintiffs

provide no Georgia statutory or common law authority for the proposition that industry standards impose a duty of care to protect against cyberattacks generally, nor do they provide support that the particular industry standards they allege have been recognized by Georgia courts.[6]

Under Georgia law, showing a violation of industry standards does not conclusively establish any duty. Kraft Reinsurance Ireland, Ltd. v. Pallets Acquisitions, LLC, 845 F. Supp. 2d 1342, 1353 (N.D. Ga. 2011) ("Evidence showing a violation of 'privately set guidelines' for industry standards is admissible and probative of negligence, but does not conclusively establish negligence or duty owed."). Thus, Plaintiffs' allegations that industry standards pertaining to cybersecurity establish a duty owed to them fails. See Spearman v. Ga. Bldg. Auth., 224 Ga. App. 801, 803 (1997) (noting that industry violations can be illustrative of negligence but do not establish negligence); Manley v. Gwinnett Place Assocs., 216 Ga. App. 379, 380 (1995), overruled on other grounds by

---

[6] Plaintiffs cite a South Carolina case for the proposition that there exists a corporate legal duty to protect third parties from cyberattacks and ransomware. Pls.' Resp. at 26 (citing In re Blackbaud, Inc., Customer Data Breach Litig., No. 3:20-MN-02972-JMC, 2021 WL 4866393 (D.S.C. Oct. 19, 2021)). Blackbaud is not binding on this Court and is distinguishable from this case because the claims involved an entirely different subject matter – the privacy of personal customer information. Blackbaud, 2021 WL 4866393, at *8.

12

Flournoy v. Hosp. Auth. of Houston Cnty., 232 Ga. App. 791 (1998) ("No legal requirement exists that the ramp comply with these [industry] standards, and violation of such privately set guidelines, although admissible as illustrative of negligence, does not establish negligence."); Sheppard v. CSX Transp., Inc., 78 F. App'x 878, 883 n.6 (4th Cir. 2003) ("Sheppard also claims that CSX's safety manuals created a duty of reasonable care towards third parties.  Although Georgia law does allow safety manuals to serve as evidence of negligence . . .  no Georgia case has held that safety manuals, by themselves, create a duty of reasonable care to third parties.").

### d.    Duty to Safeguard Consumers' Private Information

In their response, Plaintiffs cite a plethora of Georgia cases which deal with data breaches that exposed the personally identifiable information of consumers, which is not the alleged injury that occurred in this case.  See Pls.' Resp. at 26-28. It is unclear if Plaintiffs intend this to be an argument alleging some additional duty owed by Colonial, or if these cases are cited in support of Plaintiffs' industry standards argument.  In either event, this argument fails.  Pretermitting an analysis of whether there is a duty to safeguard personal information[7], this Court finds that

---

[7] On this topic, the Eleventh Circuit has questioned "the existence under Georgia law of an independent common law duty to 'safeguard and protect . . . personal

"such a duty would not be implicated in this case, as [Colonial is] not alleged to have negligently safeguarded any of [Plaintiffs'] personal information." Murray, 798 F. App'x at 492. In fact, Plaintiffs concede that Colonial had nothing to do with their personal information. Pls.' Resp. at 27 ("Colonial did not handle Plaintiffs' private information . . . .").

### e.    Duty Through Special Relationship

Plaintiffs' response also attempts to allege an additional duty that is not referenced by allegations in the SAC: "Plaintiffs alleged facts showing that they are in a relationship of dependence with Colonial because the services it supplies are essential, vital, and even necessary to their livelihoods." Id. at 28-29.

In Georgia, the scope of any "special relationship" giving rise to a legal duty concerns the duty under the "public duty doctrine" owed by a government unit and a particular citizen. City of Rome v. Jordan, 263 Ga. 26, 28-29 (1993). That doctrine has been limited in application to situations involving the duty owed by a government entity "to provide police protection to individual citizens." Dep't of Transp. v. Brown, 267 Ga. 6, 8 (1996). Regardless, the SAC fails to include any allegations of dependence which would result in a duty owed by Colonial to

---

information.'" Murray v. ILG Techs., LLC, 798 F. App'x 486, 492 (11th Cir. 2020) (quoting Dep't of Labor v. McConnell, 305 Ga. 812, 828 (2019)).

Plaintiffs.  Accordingly, the SAC does not support a duty born out of a special relationship.

In sum, because Plaintiffs fail to allege the existence of any cognizable statutory or common law duty owed by Colonial, the motion to dismiss Count I is **GRANTED**.  Heath, 2020 WL 6889164, at *10.

### 2.    The Economic Loss Doctrine Bars Recovery.

Even if the SAC adequately alleged a legal duty owed by Colonial, the economic loss doctrine bars Plaintiffs' negligence claim.  Plaintiffs assert only economic injury.  See, e.g., SAC ¶¶ 9, 11, 13, 15, 17, 19, 20 (alleging Plaintiffs incurred a financial injury because they had to pay a higher price for gas at retail), ¶ 67 (alleging Plaintiffs were "harmed in being unable to get gas and when it was available, paying a much higher price for it than they otherwise would have if the pipeline had continued to function.").[8]  In Georgia, "the economic loss rule generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort."  Hanover Ins. Co. v. Carroll, No. 1:13-CV-01802, 2014 WL 5472520, at *4 (N.D. Ga. Mar. 5, 2014)  (citing Gen.

---

[8] Plaintiffs confusingly attempt to argue that they do not allege solely economic harm and cite cases outside this circuit in which loss of time is deemed to be a cognizable harm.  Pls.' Resp. at 30-31.  However, even if those cases were of any precedential value, the Second Amended Complaint makes no such allegation.

Elec. Co. v. Lowe's Home Ctrs., Inc., 279 Ga. 77, 78 (2005)). "A plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property." Gen. Elec. Co., 279 Ga. at 78. "Where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of value . . . the courts have adhered to the rule that purely economic interests are not entitled to protection against mere negligence, and so have denied recovery." Flintkote Co. v. Dravo Corp., 678 F.2d 942, 946 (11th Cir. 1982) (collecting Georgia cases).

"Although it originated in cases involving products liability, the economic loss rule has been expanded to bar recovery in all negligence-based tort actions where a plaintiff seeks to recover purely economic losses, regardless of contractual privity." Johnson v. 3M, No. 4:20-CV-8-AT, 2021 WL 4745421, at *30 (N.D. Ga. Sept. 20, 2021) (citations and quotations omitted). "[I]n all negligence-based tort actions where a plaintiff seeks to recover purely economic losses—regardless of contractual privity—the economic loss rule precludes recovery in the absence of a duty imposed by law, an accident, or misrepresentation." Murray v ILG Techs., LLC, 378 F. Supp. 3d 1244, 1244 (S.D. Ga. 2019), aff'd, 798 F. App'x 486 (11th Cir. 2020).

Despite this growth in applicability, there are instances where the economic loss rule does not apply. First, the rule does not bar recovery

16

of purely economic losses in tort actions where the defendant breaches a duty imposed by law or arising from a special relationship. <u>See</u> <u>Unified Servs., Inc. v. Home Ins. Co.</u>, 218 Ga. App. 85 (1995) (tort actions permitted where conduct "breaches a duty imposed by law."); <u>Bulmer v. S. Bell Tel. & Tel. Co.</u>, 170 Ga. App. 659 (1984) ("Absent a special relationship, no action for breach of a duty arising from a contract exists independent of the contract."); <u>In re Arby's Rest. Grp. Inc. Litig.</u>, No. 1:17-CV-0514-AT, 2018 WL 2128441, at *12 (N.D. Ga. Mar. 5, 2018) ("The independent duty exception to the economic loss rule applies in cases where the plaintiff identified a statutory or common law duty that would have applied regardless of the existence of an underlying contract."); <u>Hanover Ins. Co. v. Hermosa Const. Grp., LLC</u>, 57 F. Supp. 3d 1389, 1396 (N.D. Ga. 2014) ("independent duty" exception to the economic loss rule "has been applied in cases where the plaintiff identified a statutory or common law duty that would have existed absent the underlying contract."). Relationships that will give rise to such a "legal duty" include an attorney and client, physician and patient, carrier and passenger, or a principal and agent. <u>Bulmer</u>, 170 Ga. App. at 660. Negligence actions involving such special relationship, regardless of contractual duties, are generally allowed because the law imposes an independent duty of care. <u>Id.</u>

<u>Id.</u> at 1243-44.

Plaintiffs allege that the independent duty exception applies because "Plaintiffs adequately allege the [sic] Colonial has an independent duty to enact appropriate cybersecurity measures to protect its private information." Pls.' Resp. at 31. However, the Court has rejected Plaintiffs' argument that (1) the SAC sufficiently alleges there is a duty to meet industry standards, and (2) that there is a duty to safeguard Plaintiffs' private information. <u>See</u> Section III.A.1, *infra*. Thus, this exception does not apply.

Plaintiffs again allege that the special relationship exception applies: "Colonial is in a special relationship with Plaintiffs as an owner and operator of [Confidential Information] supplying essential services." Pls.' Resp. at 32. The sole case relied on by Plaintiffs to demonstrate a special relationship is Murray. Pls.' Resp. at 32 (citing Murray, 378 F. Supp. 3d at 1243). However, Murray makes no mention of a special relationship that would be akin to that alleged by Plaintiffs. See Murray, 378 F. Supp. at 1245 ("As explained above, the 'legal duties' that fall outside the rule generally arise out of statutory and common law and often involve special relationships such as an attorney and client, physician and patient, carrier and passenger, or a principal and agent."). Colonial contends that the SAC does not refer to a "special relationship" under Georgia law, but "[t]o the contrary, the SAC's allegations confirm that Plaintiffs have *no relationship* with Colonial. Reply in Supp. of Def. Colonial Pipeline Company's Mot. to Dismiss ("Def.'s Reply") [Doc. 53] at 11. Plaintiffs concede this fact, stating that "Plaintiffs are neither shippers nor Colonial's direct customers." Pls.' Resp. at 22.

Accordingly, even if Plaintiffs established a legal duty owed by Colonial to them, which they have not, the economic loss doctrine would bar their negligence claim.

**B.    Count III – Alleged NCUDTPA Violation**[9]

Count III of Plaintiffs' SAC asserts a claim for a violation of the

NCUDTPA, N.C. Gen. Stat. § 75-1.1(a).  SAC ¶¶ 85-95.  "In order to state a claim

under the [NC]UDTPA, a plaintiff must show (1) defendant committed an unfair or

deceptive act or practice; (2) the action in question was in or affecting commerce;

and (3) the act proximately caused injury to the plaintiff."  Ellis v. Louisiana-

Pacific Corp., 699 F.3d 778, 787 (4th Cir. 2012) (quotations and citations omitted).

"[A] practice is unfair when it offends established public policy" and "when the

practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious

to consumers."  Eastover Ridge, L.L.C. v. Metric Constructors, Inc., 533 S.E.2d

827, 832 (N.C. Ct. App. 2000) (citation omitted).

Colonial argues that Plaintiffs' NCUDTPA claim fails as a matter of law

because Plaintiffs does not allege facts to satisfy the first element: an unfair or

deceptive act or practice.  Def.'s Br. at 27-30.  Plaintiffs contend that this element

is satisfied by their allegations that Colonial shut down the pipeline while it was

still functional and thereby increased the price of gasoline, SAC ¶¶ 67, 86; violated

industry standards, id. ¶ 87; and failed to take reasonable measures to protect their

---

[9] The parties agree that Plaintiffs' claim in Count III is governed by North Carolina
law.

systems which foreseeably lead to a ransomware attack, id. ¶¶ 64, 68.  Pls.' Resp.

at 37-40.  Plaintiffs contend that these allegations show a violation of public policy

as well as an inequitable assertion of power sufficient to demonstrate a finding of

unfair practices.  Id.; see also SAC ¶ 88.

     The Court concludes that the SAC does not adequately allege an unfair or

deceptive act or practice under the NCUDTPA.  "The determination as to whether

an act is unfair or deceptive is a question of law for the court."  Dalton v. Camp,

548 S.E.2d 704, 711 (N.C. 2001).  An unfair or deceptive act "covers five broad

categories of conduct: 1) unfair conduct, 2) deceptive misrepresentations, 3) anti-

competitive conduct, 4) certain per se violations of the statute, and 5) breaches of

contract occurring under aggravating circumstances."  Exclaim Mktg., LLC v.

DirecTV, LLC, 134 F. Supp. 3d 1011, 1022 (E.D.N.C. 2015), aff'd, 674 F. App'x

250 (4th Cir. 2016).  Here, only the first category of unfair conduct is at issue.  The

NCUDTPA does not define unfair act and a precise definition is not possible.

Noble v. Hooters of Greenville (NC), LLC, 681 S.E.2d 448, 452 (N.C. Ct. App.

2009) (citations and quotations omitted).  An unfair or deceptive practice has been

held to be "one that possesses the tendency or capacity to mislead, or creates the

likelihood of deception."  Id. (citation omitted).  Additionally, North Carolina

courts recognize that an act is unfair if it "offends established public policy" or if

"the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Eastover Ridge, L.L.C., 533 S.E.2d at 832 (citations and quotations omitted). Said differently, an unfair act occurs when one party inequitably asserts its power or position over another. Id. (citations omitted).

Plaintiffs' alleged unfair practices they attribute to Colonial of shutting down the pipeline (of which there is no duty to maintain continual operation), violating industry standards, and undertaking inadequate cybersecurity measures do not meet the high standard of unethical or unscrupulous practices recognized as unlawful under the NCUDTPA. Compare Gray v. N. Carolina Ins. Underwriting Ass'n, 529 S.E.2d 676, 681 (N.C. 2000) (finding that an insurer's failure to effectuate settlement agreements in good faith was an unfair act); Riese, 284 F.3d at 540 (finding that exploiting a partnership agreement constituted an unfair act); id. at 538 (finding that a company's act of withholding information about the shoddy work of a subcontractor from its general contractor was an unfair act).

Plaintiffs fail to provide any legal authority that would support that any of the allegations at issue equate to an unfair act under the NCUDTPA. The cases Plaintiffs rely on are inapposite. Plaintiffs argue that data breaches satisfy the unfairness prong of the Federal Trade Commission ("FTC") Act, which uses language that closely resembles the NCUDTPA. Pls.' Resp. at 38-39 (citing FTC

v. Wyndham Worldwide Corp., 799 F.3d 236, 247 (3d Cir. 2015)).  However,

Wyndham is distinguishable.  The FTC's complaint in Wyndham alleged that the

cybersecurity attack involved the exposure of consumers' personal information,

which is not alleged in this case.  Wyndham, 799 F.3d at 240 ("Wyndham engaged

in unfair cybersecurity practices that, taken together, unreasonably and

unnecessarily exposed consumers' personal data to unauthorized access and

theft.").

Plaintiffs also argue that Colonial's conduct violates the NCUDTPA because

it manifested "an inequitable assertion of power."  Pls.' Resp. at 47-48 (citing

Gray, 529 S.E.2d at 681).  See also Johnson v. Beverly-Hanks & Assocs., Inc., 400

S.E.2d 38, 42 (N.C. 1991) ("If a party engages in conduct that results in an

inequitable assertion of his power or position, he had committed an unfair act or

practice [under the NCUDTPA].").  The alleged conduct in Gray has no

relationship to the allegations in this case.  In Gray, the court found an insurance

company that engages in a practice of "not attempting in good faith to effectuate

prompt, fair and equitable settlements of claims in which liability has become

reasonably clear" engages in unfair conduct injurious to claimants.  Gray, 529

S.E.2d at 683-84.  The shutting of the Colonial Pipeline is not equivalent to an

insurance company's misconduct by unfair dealing with its insured clients.

Moreover, Defendants' alleged actions are not analogous to those acts that North Carolina have classified as an inequitable assertion of power.  See, e.g., Shepard v. Bonita Vista Props., L.P., 664 S.E.2d 388, 395 (N.C. Ct. App. 2008), aff'd, 675 S.E.2d 332 (2009) (finding the actions of the defendant RV park owner who interfered with campground users' electricity were unfair).

"[Plaintiffs'] allegations do not compel a conclusion of law that the Defendants engaged in unfair or deceptive acts or practices."  In re Siegert Props., Inc., No. 00-11184C-11G, 2001 WL 1699671, at *2 (Bankr. M.D.N.C. Mar. 7, 2001).  Accordingly, the Court concludes that Plaintiffs have failed to state a claim under the NCUDTPA, and **GRANTS** Colonial's motion to dismiss that count.

## C.    Count IV - Breach Of Public Duty (O.C.G.A. § 51-1-7)

Count IV of the SAC asserts a claim for breach of public duty pursuant to O.C.G.A § 51-1-7, which states:

> Injury suffered in common with the community, though to a greater extent, will not give a right of action to an individual for the infraction of some public duty.  In order for an individual to have such a right of action, there must be some special damage to him, in which the public has not participated.

Plaintiffs allege that "Defendants had a duty to keep the pipeline running while it was operational."  SAC ¶ 98.  Colonial argues that O.C.G.A § 51-1-7 is an enforcement mechanism that works in conjunction with existing law that already

imposes a duty, but that Plaintiffs have failed to identify any duty owed by Colonial to keep the pipeline running continuously.  Def.'s Br. at 35 ("Worse, the SAC still fails to identify any viable statutory or other authority that supplies the purported public duty to Plaintiffs 'to keep the pipeline running.'" (quoting SAC ¶ 98)).  Plaintiff fails to respond in any manner to this portion of Colonial's motion to dismiss, indicating that it is unopposed.  Kramer, 306 F. Supp. 2d at 1221.  See also Bute v. Schuller Int'l, Inc., 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) ("Because plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned.").  Moreover, as discussed above, Plaintiffs have failed to allege any facts which would establish a duty to keep the pipeline running or that the shutting down of the pipeline cause any special damage to Plaintiffs.  See Section III.A.1, *infra*.  Colonial's motion to dismiss Count IV is **GRANTED**.

### D.   Count V- Public Nuisance

Count V alleges a claim for public nuisance because Colonial "knowingly deprived the public of access to gasoline."  SAC ¶¶ 102-106; see also Pls.' Resp. at 40, 42.  "A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance."  O.C.G.A. § 41-1-1.  "A public nuisance is one which

damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." O.C.G.A. § 41-1-2. Thus, a "public nuisance requires 'some act or omission which obstructs or causes inconvenience to the public in the exercise of rights common to all.'" City of Coll. Park v. 2600 Camp Creek, LLC, 293 Ga. App. 207, 209 (2008) (quoting Cox v. DeJarnette, 104 Ga. App. 664, 676-77 (1961)).

Plaintiffs fail to demonstrate that they have a private or common right to purchase retail gasoline in general, much less gasoline transported by Colonial. Plaintiffs rely on City of College Park, for the proposition that "[s]ignificant interference with 'the public health, the public safety, the public peace, the public comfort or the public convenience' may support a finding of public nuisance." Pls.' Resp. at 42 (citing City of College Park, 293 Ga. App. at 209 (quoting RESTATEMENT (SECOND) OF TORTS, § 821B (2)(a)). However, in City of College Park, the court based its ruling on the finding of an interference with a right common to all, namely, the access to emergency services. 293 Ga. App. at 209 ("The residents of and visitors to the Wynterbrook Apartments and other complexes adjacent to Frontage Road receive the benefit of the City's fire and police protection and other emergency services because they are members of the public."). Indeed, even the comments of the Restatement recognize that a claim

for nuisance must be supported by interference with a common law right.

RESTATEMENT (SECOND) OF TORTS § 821B, cmt. b.  Here, Plaintiffs have failed to

provide factual or legal support that demonstrates they have a common right to the

uninterrupted flow of oil from Colonial (or otherwise show any common right).

The Court finds this case is more analogous to Cox, which held that:

> the landing and steps of a church, though allegedly so negligently
> constructed as to be hazardous to life and limb, do not constitute a
> public nuisance.  We do not feel there is a right common to all of the
> public to use the steps and landing of a church of a particular
> denomination.

104 Ga. App. at 677.

Accordingly, because Plaintiffs have failed to allege that Colonial's

shutdown of its pipeline prevented the public from exercising a right common to

all, Colonial's motion to dismiss Count V is **GRANTED**.  See Rivera v. Capmark

Fin., Inc., No. 1:12-CV-1097-CAP, 2013 WL 12248217, at *2 (N.D. Ga. Feb. 28,

2013) (dismissing a public nuisance claim that failed to allege a right common to

all); Briggs & Stratton Corp. v. Concrete Sales & Servs., 29 F. Supp. 2d 1372,

1376 (M.D. Ga. 1998) (dismissing a claim for public nuisance because the plaintiff

"failed to show that any contamination of the PMI property caused by Briggs &

Stratton affected a common right of all members of the public—such as the right to

clean air or clean water—or that the rights of more than a few individuals were affected by the contamination.").

### E.    Count VI - Unjust Enrichment

Count VI of Plaintiffs' SAC asserts a claim for unjust enrichment. SAC ¶¶ 107-113.

> Unjust enrichment is an "alternative theory of recovery if a contract claim fails." <u>Wachovia Ins. Servs., Inc. v. Fallon</u>, 299 Ga. App. 440, 682 S.E. 2d 657, 665 (Ga. Ct. App. 2009). Under Georgia law, "[t]he theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." <u>Smith Serv. Oil, Co. v. Parker</u>, 250 Ga. App. 270 (Ga. Ct. App. 2001). Thus, the essential elements of this claim are that (1) a benefit has been conferred, (2) compensation has not been given for receipt of the benefit, and (3) the failure to so compensate would be unjust.

<u>Hill v. Clark</u>, No. 2:11-CV-0057-RWS, 2012 WL 787398, at *6 (N.D. Ga. Mar. 7, 2012).

Colonial argues, in relevant part, that this claim should be dismissed because Plaintiffs conferred no benefit upon Colonial. Def.'s Mem. at 36-37. In response, Plaintiffs concede that the unjust enrichment claim is subject to dismissal. Pls.' Resp. at 42 n.4. Indeed, Plaintiffs' failure to allege that a benefit was conferred on Colonial by Plaintiffs is fatal to their unjust enrichment claim. <u>See, e.g.</u>, <u>Parm v. Nat'l Bank of Cal., N.A.</u>, 242 F. Supp. 3d 1321, 1335 (N.D. Ga. 2017) ("Plaintiff fails to allege that any portion of the transaction fees came from

her.").  In fact, the SAC makes clear that Plaintiffs were "downstream customers," purchasing from retailers rather than from Colonial.  SAC ¶ 112.  Colonial's motion to dismiss Count VI is **GRANTED**.

## F.    Count II – Declaratory Judgment

Count II of Plaintiffs' SAC seeks a declaration that "Defendants owe a duty to Plaintiffs and to the members of the Class to use adequate cybersecurity measures in order to keep the Colonial Pipeline secure and operational and Defendants continue to breach this duty by failing to employ reasonable measures to protect its systems (and, thus, the Pipeline)." Id. ¶ 80.  Plaintiffs seek injunctive relief requiring Colonial to employ adequate security protocols. Id. ¶ 81.  The Court concludes that Plaintiffs' claim for declaratory judgment should be dismissed because each substantive claim in the SAC fails and Plaintiffs have, therefore, failed to present a substantial controversy between the parties.  This Court agrees.

> Under both federal and Georgia law, a declaratory judgment is available only in a case of "actual controversy."  See 28 U.S.C. § 2201(a); O.C.G.A. § 9-4-2(a).  The issue is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941).  Because the facts alleged in the complaint fail to state a claim for relief, they also fail to show that there is a substantial controversy between the parties, and Plaintiff is not entitled to declaratory relief.  See Cooke v. BAC

28

Home Loans Servicing, LP, No. 1:11-CV-2126-TWT, 2011 WL 4975386 at *2 (N.D. Ga. Oct. 18, 2011) (dismissing claim for declaratory judgment when complaint failed to state claim for relief); see also Giles v. SunTrust Mortg. Inc., No. 1:13-CV-2992-RWS, 2014 WL 2779527, at *3 (N.D. Ga. June 19, 2014) ("Because Plaintiff's substantive claims are without merit, he is not entitled to the [declaratory] relief he seeks."). Accordingly, Plaintiff's claim for declaratory relief is likewise subject to dismissal.

Taylor v. Opteum Fin. Servs., LLC, No. 1:18-CV-3896-ELR-JKL, 2018 WL 6726056, at *7 (N.D. Ga. Oct. 25, 2018), R&R adopted, No. 1:18-CV-03896-ELR, 2018 WL 6725556 (N.D. Ga. Nov. 26, 2018). Accordingly, Colonial's motion to dismiss Count II is **GRANTED**.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant Colonial Pipeline Company's Motion to Dismiss [Doc. 44] is **GRANTED**, and Plaintiffs' Second Amended Class Action Complaint [Doc. 40] is **DISMISSED**. It is further **ORDERED** that Defendant Colonial Pipeline Company's Motion to Strike Class Allegations [Doc. 45] is **DENIED AS MOOT**.

The Clerk is **DIRECTED** to **CLOSE** this case.[10]

---

[10] Plaintiffs also name "Does 1-100" as Defendants, describing them as "subsidiaries and/or affiliates of the Defendant Colonial Pipeline Company that may be responsible for the conduct alleged herein." SAC ¶ 23. Fictitious-party pleading is generally not permitted in federal court. Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010). However, courts "have created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be

**IT IS SO ORDERED** this *17th* day of June 2022.


MARK H. COHEN
United States District Judge

---

'at the very worst, surplusage.'" Id. (quoting Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992)).  Because Plaintiffs have not described the fictitious parties named in the Second Amended Complaint with any particularity, the fictitious defendants are also **DISMISSED** from this action.  Dean, 951 F.2d at 1215-16; see also See Plant v. Doe, 19 F. Supp. 2d 1316, 1320 (S.D. Fla. 1998) (stating that "a district court does not have jurisdiction over unnamed defendants unless they have been served with a summons and a copy of the complaint.") (citations omitted).